**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ALAN ISMAEL PAGAN PEREZ, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-25-3178 |
| | § | |
| ME ALPHA I, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The plaintiffs, Alan Ismael Pagan Perez and Maricella Ana Benevente, contest their eviction from their residence. (Docket Entry No. 20). The defendants—ME Alpha I, LLC, Harris County, and Deryk Fields in his individual and official capacities—have moved to dismiss. (Docket Entry Nos. 24, 25, 33, 34). The plaintiffs have also filed a motion for leave to file a second amended complaint. (Docket Entry No. 37). Based on the pleadings, the motion, the record, and the applicable law, the court grants the motions to dismiss and denies the motion for leave to file a second amended complaint, because amendment would be futile. This case is dismissed, with prejudice. The reasons are below.

I. **Background**

The first amended complaint, which is the operative pleading, alleges that the plaintiffs own a home in Spring, Texas.[1] (Docket Entry No. 20 ¶ 6). On March 18, 2025, a judgment for

---

[1] The same property that is the subject of this suit was also the subject of a suit before Judge Hittner. *See* Case No. 4:24-cv-03051, Docket Entry No. 1-2 at 4. That case—brought by Benavente as the "Trust Protector" for De Novo Dymante Express Trust—alleged, among other things, wrongful foreclosure of the property. Judge Hittner granted the defendants' motion to dismiss (to which Benavente had failed to respond). Case No. 4:24-cv-03051, Docket Entry No. 7. Judge Hittner denied Benavente's motion for

possession was entered in the Harris County Civil Court at Law. (*Id.* ¶ 10). That court issued a writ of possession on April 1, 2025. (*Id.* ¶ 11). The plaintiffs allege that under Texas Rule of Civil Procedure 510.8(d)(2), the writ expired 60 days later, on May 31, 2025, and that no motion to extend the writ was filed, heard, or granted. (*Id.* ¶ 11).

On June 13, 2025, the plaintiffs notified Deryk Fields, a deputy constable with Harris County, that the writ of possession had expired. (*Id.* ¶¶ 8, 12). On June 17, 2025, Fields appeared at the plaintiffs' home with a locksmith crew and threatened arrest if they did not comply with his demand that they leave the property. (*Id.* ¶ 13). Although the plaintiffs told Fields that the writ had expired, Fields refused to provide a court order authorizing his actions. (*Id.* ¶ 14). Fields directed the locksmith crew to attempt to remove the plaintiffs. (*Id.* ¶ 15).

The first amended complaint does not allege or even imply that the plaintiffs were actually removed from their home on June 17, 2025, and the state court record confirms that they were not. Because the plaintiffs' complaint is based on the state court's issuance of a writ of possession, and the state court documents are referred to in the complaint and relied on by the plaintiffs, the court may take judicial notice of the state court filings.[2] Fields's notes on the writ of possession included in the state court docket state that, on June 17, 2025, he arrived at the property to execute the writ

---

reconsideration and her motion for abatement due to lack of proper service. Case No. 4:24-cv-03051, Docket Entry Nos. 9, 12.

[2] "[A] district court 'may consider' other 'sources' when deciding a Rule 12(b)(6) motion to dismiss, such as 'documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (quoting *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013). The Fifth Circuit has "allowed a 'district court to take judicial notice of the public records in . . . prior state court proceedings.'" *Id.* (quoting *Kahn v. Ripley*, 772 F. App'x 141, 142 (5th Cir. 2019)). Because the plaintiffs' complaint is based on the state court proceedings and because the court may take judicial notice of state court records, the court finds it appropriate to consider the state court record at this stage.

of possession; that the "Defendant" advised him that the writ was set to expire; that he then spoke with a Harris County attorney, who told him to stand down; and that he did not execute the writ until July 11, 2025.  *See* Harris County Civil Court, Case No. 1245224.[3]

On June 27, 2025, a state court judge held another hearing and signed an order dated July 2, 2026, issuing what the plaintiffs call a "second writ" of possession.  (Docket Entry No. 20 ¶¶ 16, 17).  The state court record shows that the state court did not issue a new writ but instead entered an order after an automatic bankruptcy stay was lifted, directing the Harris County Constable to execute the existing writ.  *See* Harris County Civil Court, Case No. 1245224.  The plaintiffs allege that they were not notified of the hearing that preceded the issuance of the "new" writ.  (Docket Entry No. 20 ¶ 16).  On July 8, 2025, the writ and 24-hour yellow notice were posted on the plaintiffs' door.  (*Id.* ¶ 16).  Although the amended complaint does not allege that the plaintiffs were removed from their home after the notice was posted, the proposed second amended complaint clarifies that the plaintiffs were removed on July 11, 2025.  (Docket Entry No. 37-1 ¶ 17).  The state court record is consistent.  The proposed second amended complaint clarifies that the property was transferred or sold to a third party on February 10, 2026.  (*Id.* ¶ 20).

On July 9, 2025, the plaintiffs filed this federal lawsuit.  (Docket Entry No. 1).  The court denied the plaintiffs' request for a temporary restraining order, first because the plaintiffs had misstated the law—Texas Rule of Civil Procedure 510.8(d)(2) states that a writ of possession may not be executed more than 90 days after the judgment for possession is signed, not 60 days—and because the plaintiffs had failed to identify any details about the second writ.  (Docket Entry No. 8).  On November 18, 2026, the plaintiffs filed their first amended complaint, which remains the

---

[3] The state court docket does not sort by docket number, but Fields' notes are attached to the document entitled "Writ of Property Possession Returned" filed on July 16, 2025.

operative complaint.  (Docket Entry No. 20).  The defendants—Fields, Harris County, and ME Alpha I—all filed motions to dismiss.  (Docket Entry Nos. 24, 25, 33).

Months later, the plaintiffs filed a motion for leave to file a second amended complaint. (Docket Entry No. 37).  The only notable changes in the proposed second amended complaint are additional factual allegations about the seizure and sale of the plaintiffs' home.  (Docket Entry No. 37-1).  No new causes of action were added and no other factual allegations were materially changed.

The first amended complaint asserts a single cause of action under 42 U.S.C. § 1983.  The plaintiffs allege that all three defendants deprived them of their protected property rights without due process of law.  (Docket Entry No. 20 ¶¶ 31–36).  The plaintiffs' briefing, however, characterizes their claims both as procedural due process violations and Fourth Amendment claims.[4]  (Docket Entry No. 29 at 5–6).  They request a declaratory judgment that the defendants violated their Fourteenth Amendment rights and seek compensatory damages, punitive damages, and costs and attorney's fees.  (Docket Entry No. 20 at 9).  In response, the defendants seek dismissal and oppose the motion for leave to file a second amended complaint.  (Docket Entry Nos. 24, 25, 33, 34, 39).

## II.     The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to

---

[4] As the plaintiffs frame the issues in response to the Fields's motion to dismiss, they allege a procedural due process claim for failure to issue notice and a hold hearing before issuing the new writ, in violation of *Mathews v. Eldrige*, 424 U.S. 319, 333 (1976), and a Fourth Amendment violation based on Fields's unlawful seizure of their property and persons and use of excessive force.  (Docket Entry No. 29 at 5–8).

relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## III.    Analysis

### A.  The Claims Against Deryk Fields

The plaintiffs brought claims against Fields in both his individual and official capacities. (Docket Entry No. 20).  Fields moves to dismiss the individual claims on the grounds of quasi-judicial and qualified immunity.[5]  (Docket Entry No. 24).  In response, the plaintiffs argue that qualified immunity does not warrant dismissal because Fields deprived them of their home without valid judicial authorization; that qualified immunity is "fact dependent"; and that at the Rule 12 stage, "the Court must accept Plaintiffs' allegations as true."  (Docket Entry No. 29 at 6).

The court dismisses the claims against Fields in his individual capacity.  First, Fields is entitled to both quasi-judicial and qualified immunity for his actions in enforcing the writ of possession.  "[L]aw enforce officers 'have absolutely immunity for enforcing the terms of a court order but only qualified immunity for the manner in which they choose to enforce it.'"  *Hermann v. Credit Union of Tex.*, No. SA-25-CV-642-XR, 2026 WL 196395, at *8 (W.D. Tex. Jan. 15,

---

[5] All three defendants first argue that the court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.  (Docket Entry Nos. 24, 25, 33).  The plaintiffs respond that the *Rooker-Feldman* doctrine does not apply because it "does not bar claims based on independent constitutional violations by state actors" and because they are not challenging the validity of the possession judgment, but rather the "attempted and actual execution of a writ of possession after it expired by operation of Texas law" and Fields's "independent enforcement conduct."  (Docket Entry No. 28 at 3; Docket Entry No. 29 at 3).  Although any direct collateral attack on the state court judgment is barred by *Rooker-Feldman*, claims about *enforcing* the judgment are not.  *See Mosley v. Bowie County, Tex.*, 275 F. App'x 327, 329 (5th Cir. 2008) (holding that the plaintiffs' claims collaterally attacking a state court judgment as void were barred under *Rooker-Feldman*, but claims that the defendants violated the plaintiffs' constitutional rights in enforcing the state child support judgment were not).  The Fifth Circuit is also clear that the language of "inextricably intertwined" (which the defendants rely on) "does not enlarge the core holding of *Rooker* or *Feldman*." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 385 (5th Cir. 2013); *see also English v. Crochet*, 154 F.4th 369, 373 (5th Cir. 2025) ("The key inquiry, then, is the source of the injury alleged in the federal complaint.  If the injury stems from the state court decision itself, then *Rooker-Feldman* bars federal jurisdiction.  But if the injury arises from the defendant's actions, the plaintiff asserts an independent claim not subject to *Rooker-Feldman*.").  In this case, the plaintiffs—in their own framing—request damages based on Fields' allegedly unconstitutional enforcement actions.  Those claims are not barred by *Rooker-Feldman*, even though the dispute stems from questions about the validity of the state court judgment that he was enforcing. The court concludes that it can reach the (meritless) merits.  Courts routinely hear such claims, and, just as routinely, dismiss them on the grounds of immunity or for failure to state a claim.  *See, e.g., Jefferson v. Broadnax*, No. 3:12-CV-4638-L, 2014 WL 3747151 (N.D. Tex. July 30, 2014); *Herrmann v. Credit Union of Texas*, No. SA-25-CV-642-XR, 2026 WL 196395, at *8 (W.D. Tex. Jan. 15, 2026); *see also Coleman v. Williams*, 538 F. App'x 513, 515 (5th Cir. 2013).

2026) (quoting *Hermann v. Squires*, No. SA-25-CV-561-OLG, 2025 WL 2327946, at *2 (W.D. Tex. July 21, 2025, *report and recommendation adopted*, 2025 WL 2326066 (W.D. Tex. Aug. 12, 2025)). "'[G]overnment officials in their execution of facially valid judicial orders entered by a court of competent jurisdiction' have . . . absolute immunity." *Hermann*, 2025 WL 2327946, at *1 (quoting *Mays v. Sudderth*, 97 F.3d 107, 112 (5th Cir. 1996)).

There is no dispute that the July 2, 2025, order directed the Harris County Constable to "immediately" execute the writ. "Courts routinely find that sheriffs or constables acting within the scope of their authority are entitled to quasi-judicial immunity when serving or executing writs and are absolutely immune from a suit for damages to the extent that the cause of action arises from compliance with a facially valid judicial order issued by a court acting within its jurisdiction." *Burgess v. Cox*, No. 4:14-CV-466-ALM-CAN, 2015 WL 5578009, at *5 (E.D. Tex. July 27, 2015), *report and recommendation adopted*, No. 4:14-CV-466, 2015 WL 5579866 (E.D. Tex. Sept. 21, 2015); *see also Santoro v. County of Collin, Tex.*, No. 4:18-CV-00660-ALM-CAN, 2019 WL 5692190, at *7 (E.D. Tex. Aug. 16, 2019); *report and recommendation adopted*, 2019 WL 4686361 (E.D. Tex. Sept. 26, 2019).

Because Fields complied with a facially valid court order, he is entitled to absolute immunity for his actions in executing the writ on July 11, 2025, notwithstanding the plaintiffs' allegations that the court erred by issuing a "second" writ outside the time limit for doing so. "Government officials 'should not be required to make the Hobson's choice between disobeying the court order or being haled into court to answer for damages.'" *Mays*, 97 F.3d at 113 (quoting *Patterson v. Von Riesen*, 999 F.2d 1235, 1240 (8th Cir. 1993)). "In effect," what the plaintiffs seek is a requirement that Fields should have "act[ed] as an appellate court in evaluating the legality of a decision issued by a judge trained in the law and authorized to issue such orders." *Id.*

7

Even more specifically, the plaintiffs assert that Fields should have listened to them, rather than the judge, in determining whether the writ was expired.  In these circumstances, such a result is "untenable."  *Id.*; *see also Jefferson v. Broadnax*, No. 3:12-CV-4638-L, 2014 WL 3747151 (N.D. Tex. July 30, 2014) ("An officer who executes a facially valid writ acts in good faith even when he is aware that there is a legal dispute over the matter.").  There is no allegation in any version of the complaint that Fields did anything other than carry out the writ as ordered in July 2025.

To the extent that the plaintiffs' allegations in both the amended complaint and proposed second amended complaint (generously construed) are based partly on an allegation that the manner in which Fields chose to enforce the writ on June 17, 2025, was unconstitutional, Fields is entitled to qualified immunity.  "Qualified immunity shields law enforcement officials from suit under 42 U.S.C. § 1983 if they could have reasonably believed their actions to be lawful, in light of the law 'clearly established' at the time of their actions and the information the officers possessed."  *Hermann*, 2026 WL 196305, at *8.  The plaintiff bears the burden of demonstrating that qualified immunity does not apply.  *See Doe v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 653 F. Supp. 3d 359, 373 (S.D. Tex. 2023).  "The plaintiff 'must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'"  *Id.* (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)).

There are no allegations in the amended complaint or the proposed second amended complaint that Fields took any action on June 17, 2025, besides arriving with a locksmith crew, threatening arrest, and then departing after he could not determine if the writ was still valid.  A threat of arrest is, without more, not a basis for a Fourth Amendment claim.  *Ristow v. Hansen*, 719 F. App'x 359, 363 (5th Cir. 2018).  Nor is there any plausible allegation of excessive force.  *See Martin v. Petty*, 699 F. Supp. 3d 547, 557 (S.D. Tex. 2023) (elements of an excessive force

claim).  And to the extent that the plaintiffs complain about a "seizure" of their property (although no property was actually seized that day), the property had already been foreclosed upon, and so the plaintiffs no longer had any ownership interests in it.  *See Hermann*, 2025 WL 2327946, at *2; *see also Daniel v. Ferguson*, 839 F.2d 1124, 1128–29 (5th Cir. 1988) (a plaintiff cannot state a claim for deprivation of property rights without due process of law under § 1983 where the underlying foreclosure is not invalid because a plaintiff cannot state a claim "for deprivation of rights that he does not have in property that he no longer owns").

To the extent that Fields was mistaken in attempting to execute what he believed was a valid writ, "qualified immunity allows 'ample room for mistaken judgments.'" *Woods v. Keiffer*, 610 F. App'x 416, 417 (5th Cir. 2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)); *see also Dore v. Chaisson*, Civ. A. No. 93-2632, 1995 WL 9396, at *3 (E.D. La. Jan. 9, 1995) (concluding that qualified immunity protected the deputy executing a writ of possession because "Deputy Chaisson is not an attorney and would not have any reason to consider whether the writ of possession was subject to invalidation before he executed it"); *Hermann*, 2026 WL 196395, at *8.  The plaintiffs have "not plausibly alleged" that Fields was "aware of a defect in the writ that should have stopped" him from either attempting to (or actually executing) the writ.  *Id.*  At most, the plaintiffs allege that they told Fields that the writ had expired days before he attempted to execute it on June 17.  Neither the plaintiffs nor Fields are trained in the law, and the plaintiffs misquote and misread Texas Rule of Civil Procedure 510.8(d)(2).  (Docket Entry No. 8).

In addition, the plaintiffs have not rebutted Fields's qualified immunity defense by pleading facts that could show that his conduct violated "clearly established" law.  (*See generally* Docket Entry No. 29).  That is fatal to their claims.  *See Carmona v. City of Brownsville*, 126 F.4th 1091, 1096 (5th Cir. 2025) (a plaintiff seeking to overcome qualified immunity at the Rule 12(b)(6) stage

must not only adequately plead the violation of a federal right, but also adequately plead facts showing that the defendant's conduct was unreasonable in light of clearly established law); *Doe*, 653 F. Supp. 3d at 374 (analyzing qualified immunity at the motion to dismiss stage, noting that it is the plaintiff's burden to find favorable cases that do not define the law at a high level of generality, and concluding that the individual defendants were entitled to qualified immunity in part because the plaintiff had pointed to no relevant case law).

The claims against Fields in his individual capacity are dismissed, with prejudice. The plaintiffs have already amended their complaint and the court's review of the proposed second amended complaint[6] and the state court record show that further amendments would be futile.

## B. The Claims Against Harris County

The plaintiffs also bring claims against Fields in his official capacity and against Harris County. The official-capacity claims against Fields are dismissed, with prejudice, because they are duplicative of the claims against Harris County. *See Will v. Mi. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (citation omitted)).

As presented both in the amended complaint and the plaintiffs' responses to the motion to dismiss, the *Monell* claim against Harris County is largely a failure-to-train theory based on Fields's execution of an allegedly expired writ. "To establish *Monell* liability on a failure-to-train theory, a plaintiff must prove that: '(1) the city failed to train or supervise the officers involved;

---

[6] The court has considered the facts alleged in the proposed second amended complaint only to establish the futility of further amendment. *See Pichardo v. Centene Co. of Tex.*, No. 7:19-cv-00085, 2020 WL 1308047, at *3 (S.D. Tex. Mar. 16, 2020) ("Nevertheless, in analyzing the motion to dismiss, the Court also considers Plaintiff's proposed second amended complaint in order to determine whether the second amended complaint states a claim for relief and whether amendment would be futile.").

(2) there is a causal connection between the alleged failure to supervisor or train and the alleged violation of the plaintiffs' rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.'" *Stapleton v. Lozano*, 125 F.4th 743, 753 (5th Cir. 2025) (quoting *Henderson v. Harris County*, 51 F.4th 125, 130 (5th Cir. 2022)).

Even assuming that there are viable constitutional claims here, the plaintiffs have failed to plead multiple elements of a failure to train claim. As to the first element, the plaintiffs have not plausibly alleged facts showing that the County failed to train Fields on proper eviction procedures, including training related to writ expiration dates. And as to the third element, there is no plausible allegation that any failure to train constituted deliberate indifference. "To show deliberate indifference, a plaintiff normally must allege a 'pattern of similar constitutional violations by untrained employees.'" *Hutcheson*, 994 F.3d at 482 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). When a plaintiff cannot show a pattern, they may establish deliberate indifference through a "single-incident exception," but that exception is "extremely narrow" and only applies when a plaintiff can prove "that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Id.* The plaintiffs have neither alleged a pattern nor argued that the single-incident exception applies.

In addition, to the extent the plaintiffs are also trying to bring a *Monell* claim based on an alleged Harris County policy or custom of executing allegedly expired writs, there is no plausible allegation of either an official policy or a sufficient number or pattern of incidents to constitute a policy or custom. Nor have the plaintiffs identified a final policymaker behind an allegedly unconstitutional policy or custom. On any ground, they have failed to plausibly plead a *Monell* claim. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 847–48 (5th Cir. 2009) (explaining the elements of a *Monell* claim based on an official policy or custom).

11

The plaintiffs fail to plausibly plead *Monell* liability in their amended complaint, and these issues persist in the proposed second amended complaint.  The claim for *Monell* liability is dismissed, with prejudice, because amendment would be futile.

### C.  The Claims Against ME Alpha I

According to the amended complaint, ME Alpha I appears in this matter only as a foreclosure purchaser.  (Docket Entry No. 20 ¶ 7).  ME Alpha I is not a state actor.  "Claims against private parties generally do not state a claim under § 1983."  *Hampton v. Allstate Ins. Co.*, Civ. Action No. H-23-2023, 2023 WL 2955910, at *1 (S.D. Tex. Apr. 13, 2023).  "For a plaintiff to state a viable § 1983 constitutional deprivation claim against a private party, the private party's alleged conduct must constitute state action under color of state law."  *Rockette v. Carpenter Mgmt. Co.*, No. 3:23-cv-00406-MPM-RP, 2026 WL 713682, at *2 (N.D. Miss. Mar. 13, 2026) (citing *Lugar v. Edmonson Oil Co.*, 459 U.S. 922, 931–32 (1982)).  "A court seeking to determine if a private party has acted under color of state law must inquire whether there exists such nexus between the state and the action by the private party that otherwise private behavior has in fact become behavior of the state itself."  *Id.*  "A plaintiff must allege an agreement exists between a private party and a government entity, resulting in a deprivation of constitutional rights."  *Id.*

There are no plausible allegations that make ME Alpha I a state actor.[7]  First, there are no plausible allegations in the first or proposed second amended complaint that ME Alpha did anything other than initiate the legal proceedings.[8]  "Joint participation" with a state actor must

---

[7] The bases for "joint action" by ME Alpha I in the amended complaint are (1) the initiation of court proceedings, (2) continued participation in enforcement efforts after being informed the writ had expired, (3) coordination with law enforcement during lock-out activities, and (4) benefit and reliance upon official acts by state actors, including Fields and the court system.  (Docket Entry No. 20 ¶ 21).

[8] The court also notes that the plaintiffs do not actually question the validity of the initial writ or even the underlying foreclosure proceedings in this case; they challenge only Fields' enforcement conduct.

"go[] beyond the mere use of the state court system by private litigants in the course of an ordinary lawsuit" to constitute actionable conduct by a private party under § 1983. *Earnest v. Lowentritt*, 690 F.2d 1198, 1200 (5th Cir. 1982). Simply initiating legal proceedings based on foreclosure is insufficient to transform a private party into one that could be liable under § 1983. *Id.* at 1202; *see also Tran v. Gulf Coast Bank & Tr. Co.*, Civ. Action No. 24-1933 2026 WL 294938, at *7 (E.D. La. Feb. 4, 2026) ("[T]he Fifth Circuit has held that merely pursuing state action, specifically a foreclosure action, does not amount to acting under color of state law.").

Second, to the extent that the plaintiffs allege that ME Alpha I is separately liable under § 1983 because it conspired with Fields while he was attempting to (allegedly unlawfully) enforce the writ, that allegation fails because, among other issues, general allegations of "joint action" are insufficient to make ME Alpha I a state actor under § 1983. *See, e.g.*, *Berry v. Hilburn*, Civ. Action No. 23-380-JWD-RLB, 2023 WL 8104833, at *6 (M.D. La. Oct. 17, 2023), *report and recommendation adopted*, 2023 WL 7930048 (M.D. La. Nov. 16, 2023); *Groom v. Fickes*, 966 F. Supp. 1466, 11478 (S.D. Tex.), *aff'd*, 129 F.3d 606 (5th Cir. 1997). Even assuming that there are viable constitutional claims against Fields—and there are not—there is no plausible allegation that ME Alpha I conspired with Fields in the course of any unlawful activity.

The claims against ME Alpha I are dismissed, with prejudice, because amendment would be futile.

## IV.    Conclusion

The plaintiffs repeatedly lost their challenges to the writ of possession in state court; lost their petition for a writ of mandamus in the Texas Court of Appeals; lost a challenge for wrongful foreclosure in a case before Judge Hittner; and failed to fix the fundamental issues with their case in their proposed second amended complaint. Although pro se complaints are "held to less

13

stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), "*pro se* status does not provide an 'impenetrable shield,' 'for one acting *pro se* has no license to harass others, clog the machinery with meritless litigation and abuse overloaded court dockets.'" *Hunsinger v. Valor Intelligent Processing*, No. 3:25-cv-1880-X-BT, 2026 WL 271032, at *2 (N.D. Tex. Jan. 13, 2026) (quoting *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986)), *report and recommendation adopted*, 2026 WL 269365 (N.D. Tex. Jan. 30, 2026). Upon this record, another bite at the eviction-challenge apple is simply not warranted.

This court grants the motions to dismiss the amended complaint. (Docket Entry Nos. 24, 25, 33, 34). The court denies the motion for leave to file the proposed second amended complaint because it does not cure the pleading deficiencies. (Docket Entry No. 37). The court denies as moot the motion to dismiss the second amended complaint. (Docket Entry No. 40). The court grants the motion for leave to file a sur-reply, (Docket Entry No. 44), and has considered the sur-reply, (Docket Entry No. 44-1). This case is dismissed, with prejudice, because further amendment would be futile. The court will separately enter final judgment.

SIGNED on May 26, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge

14